# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LAST CHANCE FOR ANIMALS,**
**a non-profit corporation,**

     **Plaintiff,**

**v.**                 **CIV. No. 99-1296 LH/WWD**

**THE COULSTON FOUNDATION,**
**a non-profit corporation;  DR. FREDERICK**
**COULSTON, an individual; and DOES 1-5**
**inclusive,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

   **THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Adjudication and for Summary Judgment (Docket No. 64), filed with the Court on March 12, 2001.  In their answer, The Coulston Foundation and Dr. Frederick Coulston (collectively referred to herein as "TCF") filed a counterclaim.  In its motion, Plaintiff seeks summary judgment as to all counts contained in the counterclaim, as well as summary adjudication of Plaintiff's cause of action for declaratory relief.  The Court, having considered the briefs of the parties and being fully advised, for the reasons that follow, concludes that the motion shall be **granted in part and denied in part.**

1

## I.  Background

On August 17, 1998, Plaintiff Last Chance for Animals ( referred to herein as "LCA"), launched a website with the domain name "www.CoulstonkillsChimps.com" (the "LCA Website"). In November 1998, LCA also rented a billboard, located outside TCF's main facility, offering a reward for information leading to the conviction of researchers committing animal cruelty, embezzlement, or fraud.  The billboard also contained the internet address for the LCA Website.  This billboard was rented from Bowlin Outdoor Advertising (referred to herein as "Bowlin").   On November 18, 1998, TCF's legal counsel sent a letter to Bowlin, stating that the billboard was defamatory. This letter stated that TCF would not pursue legal action if the billboard were removed within ten days of the date of the letter.  At some point after November 1998, the LCA Website address was removed from the billboard, and replaced with "www.AirForce Chimps.com."

This action originated on November 5, 1999 when LCA filed suit against TCF, alleging causes of action for declaratory relief, tortious interference with contract, tortious interference with prospective economic advantage, and defamation. On December 9, 1999, TCF filed its answer, which included counterclaims for tradename infringement, defamation and invasion of privacy. TCF filed a motion for summary judgment, which is the subject of a separate Memorandum Opinion and Order that shall be filed contemporaneously with this one.  LCA also filed the motion that will be analyzed in this Memorandum Opinion.  In addition to seeking summary judgment on three counterclaims, LCA seeks a judicial declaration that LCA may "exercise its free speech rights by use of the phrase 'www.CoulstonkillsChimps.com,' and [a ruling to the effect] that these words, as presented, are not defamatory" (*See* Complaint, Count I,  ¶ 60).

2

## II.  Count I of Counterclaim:  Tradename Infringement

Count I is a claim for tradename infringement under the New Mexico Trademark Act, N.M.S.A. §§ 57-3B-1-17 (Repl. Pamp.2000).  Potential liability for infringement is specifically covered by § 57-3B-14 of this Act.  Generally, liability attaches under two situations.  The first of these is when the use of a mark, registered under the Act, is likely to cause confusion or mistake,  or to deceive as to the source of the origin of the goods or services.  *See* § 57-3B-14(A).  Paragraph (B) of the same section imposes liability only if certain enumerated acts are taken with the "intent to cause confusion or mistake or to deceive."   It is unclear under which paragraph the counterclaim has been filed.

LCA's motion seeks dismissal of this claim on the sole basis that there is no likelihood of confusion between the service mark "Coulston Foundation" and the domain name, "CoulstonkillsChimps.com."  For the reasons that follow, this sole argument is insufficient to warrant dismissal of the claim.  Consequently, Count I of the counterclaim will not be dismissed.

To support its argument that there is no risk of confusion, LCA's only factual reference is a citation to Dr. Coulston's deposition at pages 64-65.  (LCA's Stmnt. of Undisp. Mat. Fact #17).  Dr. Coulston testified:  (1) that he had no idea whether anyone who sees CoulstonKillsChimps.com would think it was his website; (2) that he thought they sounded quite different; (3) that no one has told him that they thought the website was a Coulston Foundation website; and, (4) that he thought everybody knows the billboard was put up by LCA.  These four statements by Dr. Coulston, who claims to own one of the marks in question, provide no proof as to the likelihood of confusion or mistake under § 57-3B-14(A).  In fact, Dr. Coulston stated that he "had no idea" as to whether or not anyone would think the LCA Website was his.  Coupled with LCA's conclusory argument, this

evidence is simply insufficient to conclude as a matter of law that there is no risk of confusion.  LCA has failed to provide the Court with proof as to whether or not its use of the Coulston name is or is not likely to cause confusion or mistake or to deceive under § 57-3B-14(A).

Furthermore, LCA has provided no proof as to the intent element under Paragraph B. LCA merely makes  conclusory arguments in this regard, without use of affidavit or any other factually based materials.

LCA's motion is insufficient upon which to grant summary judgment and dismiss this tradename infringement claim, and so it will be denied.   Count I of the counterclaim shall remain in this lawsuit.

## III.  Count II of Counterclaim:  Defamation

Count II of the Counterclaim alleges that a statement of fact is contained in "CoulstonkillsChimps.com" and that it is defamatory.

### A.  Dr. Coulston and The Coulston Foundation are Limited Purpose Public Figures

LCA contends that Dr. Coulston and the Coulston Foundation are public figures, and as such, must establish defamation was done with malice.  This is a question of law for the Court to decide, and is  preliminary to its analysis of the defamation issue.

LCA's Statement of Undisputed Material Facts states:

11.  The Coulston Foundation is a well known organization that interacts with the media and the government and has been the focus of public discussion over the years.  (McKinney Depo. at 19-25, 34-38).
12.  Dr. Frederick Coulston is an internationally known figure within the field of animal research who interacts with the media and the government (McKinney Depo. at 25-26; 29, 39-40).

Without citing any factual support in the record, TCF simply denies that either Dr. Coulston

4

or The Coulston Foundation is well known outside scientific circles, or that Dr. Coulston is a public figure within the community where the billboard was posted.  In other words, Counterclaimants merely issue a blanket denial that the Coulston Foundation or Dr. Coulston is a public figure.

This failure to factually dispute LCA's Statement of Fact Numbers 11 and 12, leaves the Court no choice but to accept these two statements as true.  I will accordingly evaluate these statements under the legal standards for the status of a "public figure."

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974), the Supreme Court identified two classes of public figures, general-purpose and limited-purpose, as follows:

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.  In either case such persons assume special prominence in the resolution of public questions.

Counterclaimants clearly would not qualify as general-purpose public figures,  because they do not have the requisite pervasive fame or notoriety.  They do, however, qualify as limited-purpose public figures.

As noted by Judge Parker in *Schwartz v. American Medical Ass'n*, determination of limited public figure status focuses on "whether the defamatory material concerns a public controversy or topic of legitimate public concern, together with the nature and extent of [the person's] participation in the controversy." 23 F. Supp.2d 1271,1274 (D.N.M. 1998)*, quoting Furgason v. Clausen*, 109 N.M. 331, 338 (Ct. App. 1989).

The first prong, that of public controversy or topic of legitimate public concern, is satisfied even if it is understood to be a controversy among the limited public concerned with TCF's work with chimpanzees.  However, that controversy is also a part of the larger, animal-rights controversy that

5

frequently finds its way into all sorts of media nationally. Furthermore, as an "internationally known figure within the field of animal research," Dr. Coulston and his foundation actively participate in the controversy by way of their participation in such research. For these reasons, I conclude that both Dr. Coulston and the Coulston Foundation are public figures for a limited purpose.[1]

Having made this conclusion, it becomes "incumbent upon [Dr. Coulston and the Coulston Foundation] to prove that [LCA] acted with actual malice (with knowledge of falsity or in reckless disregard of the truth)," *Marchiondo v. Brown*, 98 N.M. 394, 402 (1982), as a prerequisite to liability for compensation of actual injury.[2] In other words, it becomes the burden of proof for Counterclaimants to prove that the alleged defamatory statement is false. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774-76 (1986). *See* SCRA 2001, 13-1006. LCA seeks to have this defamation claim dismissed, arguing that the content in "CoulstonkillsChimps.com" is true.

### B.  Relevant Undisputed Evidence

This Court must determine whether or not an issue of material fact exists as to the truth of the statement at issue, given the literal meaning of the word "kill." Black's Law Dictionary 870 (6th ed. 1990) defines the word "kill" as "to deprive of life; to destroy the life of an animal or person."

---

[1]  The conclusion that Dr. Coulston and his foundation are public figures for a limited purpose does not mandate a conclusion however that this domain name is entitled to protection under the First Amendment. As correctly asserted by TCF, First Amendment protection may only be extended in  instances wherein there is *governmental* interference with a right to speech. Dr. Coulston and his foundation are not governmental officials, nor are they state actors. Accordingly, no protection under the First Amendment may be applied in this situation which involves private parties.

[2]  Actual injury in defamation cases has been held to encompass more than out-of-pocket loss, and includes such items as impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. *Marchiondo*, 98 N.M. at 402. Punitive damages are recoverable if Counterclaimants can prove that the publication was made with actual malice. Id. at 403.

An intent element is not included in the definition of this word.[3]   In determining the truth or falsity of the statement before the Court, therefore, it is essential to stay focused on the narrow issue involved:  whether or not there is an issue of material fact as to whether or not TCF has deprived any chimpanzees of life, without consideration of TFC's intent.

Taken in the light most favorable to the non-movant, TCF, the evidence is comprised of numerous denials by Dr. Coulston that the Coulston Foundation kills chimps   *See* Coulston Depo. at 33, 39.  Dr. Coulston testified that "we have a better record than anybody in the country.  The incidence of deaths in our facility, considering we have over 600 chimps, is spectacular." *Id*.  He testified that "We have the data to prove that we don't kill chimps.  Chimps die.  They die in every facility in the world.  In zoos, even.  We don't kill chimps, period.  We try to save chimps from diseases." *Id*. at 48-49.

In arguing that the statement is true, LCA also relies primarily on the deposition testimony of Dr. Coulston:  "We save the lives of thousands and millions of people, damn it.  That's our aim.  And if I happen to kill a chimp along the way, God forbid, then it'll be so."  Coulston Depo. at 52.  Dr. Coulston went on to say:  "So, you know, everything is relative.  But we don't kill chimps willfully and because we like to do it." *Id*. at 53. At page 50, he stated that TCF does not deliberately kill chimps.  Dr. Coulston testified that he did not know of any chimp who ever died of negligence in his facility, *Id*. at 51; and that neither he nor TCF has been convicted of a violation of the Animal Welfare Act.   *Id*. at 69.   A fair reading of Dr. Coulston's deposition testimony is he denies

---

[3]   In contrast, Black's defines the word murder as "the unlawful killing of a human being by another with malice aforethought, either express or implied."  (*Id*. at 1019).  Similarly, the definition of manslaughter involves an intent element:  "The unjustifiable, inexcusable and intentional killing of a human being. . . ." (*Id*. at 964).

7

intentionally killing chimps.

Former TCF President Griffin testified that that he did not know how many chimpanzees had actually died in experiments at TCF, but that it was "not a dozen." Griffin Depo. at 51. Griffin also stated that he knew that the chimp Holly died as part of a study of pharmaceutical compounds; that the company sponsoring the work failed to provide TCF with information on the toxicity of the drug. *Id*. at 87.

Ron Couch, involved in experimental and applied research at TCF, testified about an incident when three chimpanzees were sedated as a group in the same cage, one chimpanzee regained consciousness before the chimpanzee "Jello" did, and asphyxiated "Jello" by standing on his neck. Dr. Couch testified as to why chimpanzees should not be sedated as a group, and stated that he did not know why these chimpanzees were sedated as a group, given that it was a bad procedure. Couch Depo. at 96-97.

Neither Griffin's nor Couch's testimony about specific instances when chimps died as part of experiments at TCF is directly controverted. The affidavit of Joseph Erwin, TCF's expert, does not factually controvert this testimony. Erwin states that he has extensively visited the TCF facilities and that he has reviewed morbidity and mortality issues, with special attention to the circumstance of the deaths of some chimpanzees. Without any factual basis or explanation, he offers the conclusory opinion that the assertion "CoulstonkillsChimps" is not an accurate portrayal of reality or intent. This conclusory, unsupported opinion is not sufficient to overcome the undisputed evidence that at least two chimpanzees have been killed during experimental procedures at TCF.[4]

---

[4] The Court has also disregarded the affidavit of LCA's expert witness, Barnes. It is not based upon personal knowledge, but rather upon opinions of other unidentified scientists and United States Department of Agriculture ("USDA") inspectors. His opinions appear to have no independent factual basis. For these reasons,

### C.  Analysis of Evidence

In summary judgment proceedings, the burden of establishing the absence of a material question of fact is on the movant.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  That burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991).  The non-movant may not rest on its pleadings, but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  *Celotex Corp.*, 447 U.S. at 324.

Here, Dr. Coulston and others who have worked at TCF have issued blanket denials to the effect that TCF does not kill chimps.  A blanket, self-serving statement is not a sufficient basis to defeat summary judgment.  *See Citizens State Bank of Big Lake v. Transamerica Ins. Co.*, 815 F. Supp. 309, 312 (D.Minn.1993)(denials and allegations fail to constitute specific facts requiring trial).  Specific evidence of some weight is required to defeat summary judgment.  *See Virginia Ins. Reciprocal v. Forrest County General Hosp.*, 814 F. Supp. 535, 538 (S.D. Miss. 1993).

The circumstances of the deaths of chimpanzees Jello and Holly are undisputed by TCF and indicate that the deaths occurred during medical experiments performed by TCF, not due to acts of nature.  These undisputed facts support the conclusion that TCF has killed chimps during its

---

the Court will not rely upon this affidavit in any way.

     Similarly, the two USDA complaints that LCA filed with the Court are not entitled to consideration by the Court.  As noted in the complaints themselves, they shall be served upon TCF "for the purpose of determining whether [TCF] has in fact violated the regulations and standards issued under the [Animal Welfare Act]."  Clearly these complaints are not findings of the USDA, as urged by LCA, nor are they evidence that may be properly considered in the analysis of this summary judgment motion.

experiments, albeit it perhaps not intentionally.  Based on this undisputed evidence, I must conclude that the contents of the domain name are literally true because there is no question of fact that chimpanzees  have been killed during experiments by TCF.

### D.  Defamation by Implication

This is not the end of the Court's analysis on this issue however.  TCF contends that the harm here is that LCA's slogan gives rise to an implication that TCF kills chimpanzees through negligence, or as part of its research protocols.  TCF contends that this implication arises in part from inclusion of the domain name on the billboard that offered a reward for information leading to a conviction for cruelty to animals.   TCF contends that there is no evidence to support an implication that Coulston intentionally kills chimpanzees.

New Mexico courts adopted the cause of action for defamation based on implication in the case of  *Moore v. Sun Publ'g Corp.*, 118 N.M. 375, 381 (Ct. App.), *cert. denied,* 118 N.M. 430 (1994).  The theory of defamation by implication recognizes that "[t]he reputational injury caused by a communication may result not from what is said but from what is implied."  Rodney A. Smolla, *Law of Defamation* § 4.05[1]. at 4-17 (1994), *quoted in Moore,* 118 N.M. at 381.  It thus becomes incumbent upon the Court to examine whether TCF has stated undisputed facts upon which a jury could find that reputational injury was caused, not by what was literally said on the billboard and website, but by what was implied.

In an action for defamation, the courts are charged with the responsibility of determining whether a challenged statement is "capable of conveying a defamatory meaning."  *Southern Air Transport, Inc. v. American Broadcasting Companies, Inc.*, 877 F.2d 1010, 1013-14 (D.C.Cir. 1989).  A defamatory statement is one which "has a tendency to render the party about whom it is

published contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him." *Andrews v. Stallings*, 119 N.M. 478, 482 (Ct. App. 1995). If, at the summary judgment stage, the court determines that the publication is capable of bearing a defamatory meaning, a jury must determine whether such meaning was attributed in fact. *Id.* "The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." RESTATEMENT (SECOND) OF TORTS § 563 (1977). Whether statements are capable of a defamatory meaning is initially a question of law for the district court. *Mendoza v. Gallup Independent Co.*, 107 N.M. 721, 724-25 (Ct. App. 1988). Generally, a court can only rule, as a matter of law, that it is not defamatory, if the publication is not reasonably capable of any defamatory meaning and could not be reasonably understood in any defamatory sense.

The topic of defamation by implication is an area fraught with subtle complexities. "The Court must first examine what defamatory inferences might reasonably be drawn from a materially true communication, and then evaluate whether the author or broadcaster has done something beyond the mere reporting of true facts to suggest that the author or broadcaster intends or endorses the inference." *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C.Cir. 1990), *quoted in Moore*, 118 N.M. at 381. The *White* Court emphasized that the tortious element is provided by the affirmative conduct of the author or broadcaster, although it is immaterial for purposes of finding defamatory meaning whether the author or broadcaster actually intended or endorsed the defamatory inference. *See White*, 909 F.2d at 520.

Applying these standards, I conclude that readers of the website and of the billboard might have drawn a defamatory inference that TCF deliberately killed chimps. Certainly, combining the

domain name with the offer of a reward on the billboard  for information leading to a conviction for cruelty to animals is an affirmative act by LCA that could suggest that LCA intended or endorsed such an inference.  I conclude that the statements on the website and on  billboard are capable of defamatory meanings.  Whether or not they were  interpreted this way will be a question of fact for the jury.

One last topic must be discussed in this regard.  If this statement is one of "opinion," it is not actionable, even though it might well remain defamatory, that is, injurious to reputation.  Common law defamation will lie for false statements of fact but not for those statements that are but fair opinion.  *Mendoza,* 107 N.M. at 723.  I am unable to determine, as a matter of law, wether or not the statement at issue here is unambiguously fact or opinion.  I conclude that this is also a triable issue of fact for the jury.  *See*  UJI 13-1004, NMRA 2001.


**IV.  Count III of Counterclaim:  Invasion of Privacy**

Count III of TCF's counterclaim is for the tort of invasion of privacy. In this regard,  TFC alleges:  (1)  that LCA appropriated Dr. Coulston's name for its own purpose when it used his name in a commercial website/domain name posting;  (2) that LCA used Dr. Coulston's name to advertise its business when it posted its commercial website on the billboard;  (3) that the use of Dr. Coulston's name on the website and billboard was to obtain funding for LCA and that these appropriations of Dr. Coulston's name for commercial gain constituted an invasion of his privacy; and, (4) that the highly offensive statement  "CoulstonKillschimps", placed Dr. Coulston before the public in a false light.

New Mexico recognizes the tort of invasion of privacy.  *McNutt v. New Mexico State Tribune*

*Co.,* 88 N.M. 162, 165 (Ct. App. 1975).  This tort is generally broken down into four categories of claims:  false light, intrusion, publication of private facts, and appropriation.  *See Moore v. Sun Publ'g Corp.*, 118 N.M. at 383. Of these, TFC makes only two types of claims, that LCA placed Dr. Coulston in a "false light" and that it "appropriated" Dr. Coulston's name.  Of these two, LCA challenges only the legal sufficiency of the false light claim.  For the reasons that follow, the Court concludes that the false light claim will be dismissed, but because the appropriation claim is unchallenged, it will remain in the case.

False light invasion of privacy protects a person's interest "in being let alone."  RESTATEMENT (SECOND) OF TORTS § 652E (1977).

In its summary judgment motion, LCA argues that the false light claim must fail because the statement is true and because it is not apparent whether the statement refers to Dr. Coulston or to The Coulston Foundation.  LCA also argues that the claim must fail because counter-claimants are unable to establish any damages.

LCA raised the issue of provability of damages in its initial brief.  In response, TCF stated that, although Dr. Coulston testified that he did not believe the statement referred to him, his son, Craig, was depressed when he saw his name on the billboard.  It is on this basis that Dr. Coulston claims that the privacy of his family was invaded, with detrimental effect.  (Def's Resp. to Pltf's Mot. for Sum Jud. at 16).

Craig Coulston is not a party to this lawsuit.  Count III of the counterclaim did not allege damage to him, but to Dr. Coulston.

Only individuals have a right to seek recovery for invasion of privacy (as opposed to corporations), *Andrews v. Stallings,* 119 N.M. at 493,  and there is generally  no vicarious right of

13

recovery by one family member for the invasion of privacy of another.   Smolla, *Law of Defamation* § 10.3 at 10-4 (1994).

The only injury asserted by TCF is to Craig.  When asked what his immediate reaction to the billboard was, he stated:  "Depression,"  C. Coulston Depo. at 106.  When asked who he mentioned the website to, he stated "I don't know.  It wasn't important to me.  It wasn't important to me except that it was depressing."

Without weighing the evidence, the Court notes that this is a minimal injury.   More importantly however, the Court notes that Craig Coulston is not a party to this litigation.  This is the only injury established by TCF, and it is not germane to the named counter-claimants.  Accordingly, this claim must be dismissed.

## V.  Declaratory Judgment Issue

Plaintiff seeks adjudication at this stage of the proceedings that it may "exercise its free speech rights by use of the phrase 'www.CoulstonkillsChimps.com,' and that these words, as presented, are not defamatory."  *See* Complaint, ¶ 60.[5]

As stated above, the Court has left open the issue of whether or not this phrase constitutes defamation by implication.  Obviously, it would be premature  to award the declaratory relief that LCA seeks at this juncture.

For these reasons, the Court declines to grant declaratory relief to LCA and this part of its motion is **denied.**

**WHEREFORE**, for the above-stated reasons, the Court concludes that LCA's motion for

---

[5]In seeking declaratory relief, LCA refers the Court to the Declaratory Judgment Act, N.M.S.A. § 44-6-14 (Repl. Pamp. 2000).

summary judgment seeking dismissal of the counterclaim is ruled upon as follows:

I.  **Denied** as to Count I (tradename infringement);

II. **Denied** as to Count II.  Specifically, a claim for defamation by implication shall remain in the lawsuit.

III. **Granted** as to Count III,  insofar as it contains a claim for a false light invasion of privacy.  This false light claim shall be **dismissed**.  The invasion of privacy by wrongful appropriation was unchallenged by LCA, and shall remain in the lawsuit.

Furthermore, LCA's request for declaratory judgment is **denied** at this juncture, as being premature.

**IT IS SO ORDERED.**

_____

**UNITED STATES DISTRICT JUDGE**

15