# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAST CHANCE FOR ANIMALS,
a non-profit corporation,

              Plaintiff,

v.                                                    CIV. No. 99-1296 LH/WWD

THE COULSTON FOUNDATION,
a non-profit corporation;  DR. FREDERICK
COULSTON, an individual; and DOES 1-5
inclusive,

              Defendants.

## MEMORANDUM OPINION AND ORDER

  **THIS MATTER** comes before the Court on Defendant's Motion for Partial Summary

Judgment (Docket No. 69), filed on March 12, 2001. This motion seeks dismissal of Counts II-VII

of the complaint.   Count II is for tortious interference with contract, Count III is for tortious

interference with prospective economic advantage and Counts IV-VII are for libel, libel per se,

slander and slander per se respectively.[1]  The Court, having considered the arguments and briefs of

the parties, for the reasons that follow, concludes that Defendants' motion shall be **granted**, and that

Counts II-VII of Plaintiffs' complaint shall be dismissed.

  For ease of reference throughout this opinion, whenever possible,  Defendants Dr. Frederick

---

[1] Count I, which is not the subject of this pending motion, seeks a judicial declaration and determination
that Plaintiff may "exercise its free speech rights by use of the phrase 'www.CoulstonkillsChimps.com,' and that
these words, as presented, are not defamatory."

Coulston and The Coulston Foundation will be collectively referred to as "TCF".

## I.  Background

For the purposes of this motion, the Court concludes that the undisputed relevant facts are as follows.[2]

On August 17, 1998, Plaintiff Last Chance for Animals ("LCA"), an animal rights group, launched a website with the domain name "www.CoulstonkillsChimps.com" (the "LCA Website"). On approximately August 19, 1998, Dr. Travis Griffin, then president of The Coulston Foundation, sent e-mail messages to The Tinker's Domain, LCA's website service provider, alleging that LCA's Website was defamatory and constituted trademark infringement[3].  Although it mentioned possible legal actions in its communications, TCF did not initiate legal action against The Tinker's Domain or WarpSpeed.

Tinker's Domain advised TCF that it would disrupt the LCA Website only if it received advice from competent legal authority that it contained illegal material.  The LCA Website was shut down for approximately one week and then reinstated.

Mr. Griffin posted a message on Primate Talk where he quoted a message received from WarpSpeed, and where he stated:  "I leave it to Primate Talk readers to judge for themselves who is unethical and who 'purports to speak the truth' "(Ex. 3 to Griffin Depo).

In November 1998, LCA rented a billboard, located outside TCF's main facility, offering a

---

[2]  Many of these facts were stipulated to by the parties in the April 12, 2001 Pre-Trial Order.

[3]  Specifically, Griffin's e-mail to The Tinkers Domain stated in pertinent part:  "The sites you are hosting have illegally used copyrighted material, trademarks, and tradenames.  They defame the foundation and its founder, Dr. Frederick Coulston, a world renowned scientist.  We believe the material to be libelous.  The sites do not promote a legitimate business or cause but are solely intended to bring harm to the Coulston Foundation .... we demand you immediately remove these offensive sites and cease publishing libelous material against the Coulston Foundation."  (Ex. 1 to Griffin deposition).
   WarpSpeed was also allegedly contacted.  There is no proof or record of this communication in the Court file, however.  Consequently, the Court will not consider this alleged communication in its analysis.

reward for information leading to the conviction of researchers committing animal cruelty, embezzlement, or fraud. The billboard also contained the address for the LCA Website. This billboard was rented from Bowlin Outdoor Advertising (hereinafter referred to as "Bowlin"). On November 18, 1998, TCF's legal counsel sent a letter to Bowlin, stating that the billboard was defamatory. This letter stated that TCF would not pursue legal action if the billboard were removed within ten days of the date of the letter. TFC's Communications Director, Don McKinney, telephoned Bowlin and "suggested to them that there was a potential case of libel, of which they might be responsible..." (McKinney Depo. at 62). At some point after November 1998, the LCA Website address was removed from the billboard, and replaced with "www.AirForceChimps.com".

On December 9, 1998, the Alamogordo Daily News published an article that included quotes from McKinney. In the article, Mr. McKinney was quoted as characterizing the sign as libelous, stating that the LCA was the "surface layer of a group of individuals who have taken it upon themselves to stop all medical research in the country — actually around the world." Mr. McKinney was not further quoted except that he "questions the fund raising tactics of groups such as Last Chance for Animals, which have no experience with domestic chimpanzee care."

## II. Summary Judgment Standards

In summary judgment proceedings, the burden of establishing the absence of a material question of fact is on the movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). That burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material

matter.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991).  The non-movant may not rest on its pleadings, but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  *Celotex Corp.*, 447 U.S. at 324.   Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.  *Jones v. Southwest Airlines*, 99 F.Supp.2d 1322, 1325 (D.N.M. 2000).

## III.  Count II –  Claim for Tortious Interference with Contract

Count II of the complaint alleges that LCA had existing contracts with the Tinker's Domain and with Bowlin.  It alleges that TCF made false threats against these two entities with the intent of inducing breach of the two existing contracts and to otherwise interfere with LCA's contractual rights.   LCA contends that it was damaged when its website was temporarily taken down and when its billboard message was diluted.

> This tort of contractual interference requires proof of:
> 1.  a contract or prospective contractual relation;
> 2.  defendant's knowledge of the contractual relation;
> 3.  intentional and improper interference, which means either:
>      a.  improper motive solely to harm plaintiff, or,
>      b.  an improper means; and
> 4.  pecuniary harm caused by the interference.

*Clough v. Adventist Health Systems, Inc.*, 108 N.M. 801, 806 (1989).

The first two elements of this tort are not effectively disputed; either LCA had an existing contract or potential contractual relationship with these three entities, and TCF's knowledge of this

4

is demonstrated by its contact with the entities.[4]  I interpret Count II as including claims for improper motive and improper means.  I find this third element to be more problematic than the first two elements.

As movant, it is TCF's burden to show an absence of material question of fact with regard to this third element.  In other words, TCF must show that it is undisputed that it did *not* engage in intentional and improper interference by either an improper motive solely to harm LCA, or by an improper means.

TCF argues that it was justified in notifying these entities for the purposes of protecting its interest in its trademark or tradename, and to be free from defamatory language.  TCF denies being motivated solely to harm LCA, or that what it did was by improper means.  More specifically, TCF maintains that its motives and means were both properly calculated to protect itself from further attacks by LCA, and not for the purpose of harassing LCA or its contractual partners.

The communications to be scrutinized, those of Griffin, McKinney, and TCF's legal counsel, are generally outlined in the "Background" section above.  TCF's actual proof on this issue, however is contained in Paragraphs 7, 8, 16 and 17 of its Statement of Material Facts.  As noted there, McKinney testified as to the content of his conversation with Bowlin, wherein he suggested "there was a potential case of libel."  McKinney Depo. at 62.  He testified he was concerned about the effects the billboard would have; that TCF was "being ridiculed in the community"; and, that he was specifically concerned about direct  misinformation from LCA. *Id*. at 63.  Griffin testified that he was

---

[4]  Although TCF denies, in its Answer to Interrogatory No. 19, that it was not aware of any "existing" contracts between LCA and WarpSpeed, Tinker's Domain and Bowlin, this answer does not preclude the possibility that TCF was aware of the *possibility* that contracts existed between LCA and these entities, as indicated by its contact with them.

concerned about a loss of funding to TCF being caused by the LCA Website.  Griffin Depo. at 36.

The content of his actual  e-mail message to The Tinker's Domain are in the record, and attached to

his deposition as Exhibit 1. In pertinent part, this e-mail message stated:

> The sites you are hosting have illegally used copyrighted material, trademarks and
> tradenames,  They defame the foundation and its founder, Dr Frederick Coulston, a world
> renowned scientist.  We believe the material to be libelous.  The sites do not promote a
> legitimate business or cause but are solely intended to bring harm to the Coulston Foundation.

TCF has provided the letter from legal counsel, Lynne Pruett, to Bowlin, which states, "[T]he

billboard amounts to libelous and defamatory communication and thus is not protected speech."  This

letter goes on to state that if it is not removed within ten days of the date of the letter, "my client

stands ready to pursue all legal remedies available . . . ."   This constitutes all evidence submitted by

TCF to establish an absence of improper means or methods.

In a Memorandum Opinion and Order, filed simultaneously with this one, this Court has

concluded that whether or not the LCA domain name was in fact defamatory and a tradename

infringement are questions to be decided by the jury.  In other words, it has not yet been determined

whether or not the concerns expressed by McKinney, Griffin, and Pruett in their communications, are

legally justifiable.  Even if the domain name, as contained on the website and billboard, did not

constitute defamation or tradename infringement however, TCF has presented evidence of  justifiable

motives in communicating with these three entities.  TCF has shown evidence that its motive was not

to harm LCA, but rather was based on a *bone fide* attempt to protect its own interests.

In response, without any factual support, LCA makes the conclusive statement that TCF had

no good faith belief that LCA had infringed upon its mark, or that the LCA Website was defamatory.

The only actual evidence in the record that LCA has proffered in this regard is DeRose's Declaration,

wherein he makes the conclusory statement that "interference [to inform the public of TCF's actions] was accomplished through untruthful accusations against LCA and threats of legal action against the website and billboard providers."   DeRose Decl. at Para.4.

Specifically,  LCA points to no facts that contradict TCF's stated motivation for its actions, which is the first pertinent issue in evaluating Count II.  Given the lack of a factual basis, I conclude that LCA has adduced no evidence from which a jury could find that, by contacting these entities, TCF's sole or primary motivation was to harm LCA.

Next, I will evaluate the issue of improper means.  TCF has presented evidence that the means of communication were by letter, e-mail and by telephone, and as stated above, TCF has presented evidence as to the contents of these communications.  TCF makes the legal argument that none of the means of communication was improper.  Although its brief is quite confusing on this issue, it appears that LCA's only contention is that TCF used libelous means to interfere with its contractual relationship with third parties.  Although tortious behavior is not required as a means of interfering with a contract, *see Diversey Corp. v. Chem-Source Corp*., 125 N.M. 748 (Ct. App. 1998), certainly tortious conduct would qualify as "improper means".  As explained fully below, I conclude that none of TCF's communications with third parties was defamatory.  Given this conclusion, LCA's s sole contention as to improper means is without legal merit.

For these reasons, Count II, LCA's claim for tortious interference with contract shall be **dismissed.**


## IV.  Interference with Prospective Economic Advantage

Count III of LCA's complaint is entitled "Tortious Interference with Prospective Economic

Advantage." It appears to be aimed at economic harm caused by the allegedly wrongful interference by TCF with its website and billboard. The Court has determined that LCA's claim for wrongful interference with the contracts of the website and billboard providers shall be dismissed. Given this decision that TCF did not improperly interfere with LCA's contracts with Tinker's Domain and Bowlin, TCF cannot be liable for any loss of prospective economic advantage LCA might have enjoyed had the website and billboard continued uninterrupted.

TCF is entitled to summary judgment on this issue. Count III shall be dismissed.


## V.  Counts IV-VII ---  Claim for Defamation

Counts IV-VII are for libel, libel per se, slander, and slander per se. Slander (an oral communication) and libel (a written communication) are subcategories of defamation. Because the lines of demarcation between these two torts have become sufficiently blurred, in 1970 the New Mexico Supreme Court abolished the distinction between them. *See Reed v. Melnick*, 81 N.M. 608, 612 (1970). Consequently, I will review all allegations contained in Counts IV-VII under the requirements for defamation actions.

The allegedly defamatory acts are detailed on pages 2-3 of this Memorandum Opinion. In large measure, the content of these communications was stipulated to by the parties in the Pre-Trial Order. Read in the light most favorable to LCA, Griffin's e-mail to The Tinker's Domain stated that the LCA Website was libelous and constituted trademark infringement. Mr. Griffin's posted message on Primate Talk states that readers should be left to "judge for themselves who is unethical and who 'purports to speak the truth' ". Both communications to Bowlin from TCF suggested that the billboard was defamatory. Likewise, in a  newspaper article, Mr. McKinney was quoted as

characterizing the billboard as libelous.  Further, McKinney was quoted as stating that the LCA was the "surface layer of a group of individuals who have taken it upon themselves to stop all medical research in the country –  actually around the world".  Finally, he was quoted as questioning the fund raising tactics of groups such as LCA.

In New Mexico, defamation is defined as a wrongful injury to a person' reputation. *See* UJI 13-1001,  NMRA 2001. Generally, the elements of a defamation action include:  a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff.  *See* SCRA 1986, 13-002. An action for defamation lies only for statements of fact and not for statements of opinion. *See Kutz v. Independent Pub. Co., Inc.,* 97 N.M. 243 (Ct. App. 1981).

Whether the statement involved is one of opinion or of fact must be determined in each instance.  In resolving the distinction, the following should be considered:  (1)  the entirety of the publication;  (2)  the extent that the truth or falsity may be determined without resort to speculation; and (3)  whether reasonably prudent persons reading the publication would consider the statement as an expression of opinion or a statement of fact.  *Marchiondo v. Brown*, 98 N.M. 394 (1982).

TCF makes a compelling argument that the recipients of these communications understood them to be statements of opinion and not statements of fact.  In its motion, TCF urges that because these are statements of unambiguously wholly opinion, they are not actionable as being defamatory, that consequently the Court should decide the question as a matter of law.

First I will consider the communication to The Tinker's Domain.  That entity's response to Griffin's e-mail stated that if it was "informed by competent legal authority that the domain(s) contain illegal content, [it] will cease to serve such domains until [it was] satisfied that the illegal content has

been removed." (Ex. 2 to Griffin's deposition). This response indicated that it appreciated Griffin's "position". Based on the record before me, it is undisputed that The Tinker's Domain considered Griffin's e-mail to be his opinion or position, subject to review by "competent legal authority". It is evident that The Tinker's Domain did not consider Griffin's assertions that LCA's Website contained harmful, illegal and/or defamatory material, to be factual. Given this record, I conclude that LCA cannot establish this communication to be defamatory.

Similarly, Bowlin did not accept as fact TCF's assertion that the LCA Website was defamatory. Rather, counsel for Bowlin suggested that LCA file a declaratory judgement action for a determination as to whether or not it was defamatory. For this reason, I must conclude that the communication to Bowlin could not be defamatory.

Next I consider the message that Griffin posted on Primate Talk. He wrote: "I leave it to PT readers to judge for themselves who is unethical and 'who purports to seek the truth' ". This statement clearly implies that LCA is unethical and that it does not seek the truth. The question arises as to whether or not such a statement rises to the level of defamation. Again, there is no dispute in the record that this query is not a statement of fact, but rather an invitation to Primate Talk readers to form their own opinions. For this reason, I must conclude that this statement is not defamatory.

The McKinney newspaper quotes are the final statements to be analyzed. McKinney called the billboard "libelous", and characterized unidentified people as a "surface layer of a group of individuals" who have undertaken to stop all medical research in the world. Finally, in the article, McKinney questioned the fund raising tactics of groups such as LCA. The "surface layer" comment appears to be directed at animal rights groups generally and not specifically at LCA. It is not a per se negative comment. Questioning fund raising tactics of "groups such as LCA" does not constitute

10

a statement that could be perceived as a fact.  Read in its entirety, I conclude that reasonably prudent persons would consider this quote as being McKinney's opinion.

For these reasons, I conclude that TCF shall be granted summary judgment on the defamation claims and that Counts IV-VII shall be **dismissed.**

**WHEREFORE**, for the above-stated reasons, the Court concludes that TCF's motion for summary judgment seeking dismissal of LCA's compliant is ruled upon as follows:

I.  **Granted** as to Count II, the claim for tortious interference with contract.

II.  **Granted** as to Count III, the claim for interference with prospective economic advantage.

III.  **Granted** as to Counts IV-VII, the claims for defamation.

Count I, LCA's claim for declaratory judgment, was not challenged by TCF's motion for summary judgment and so shall remain in the lawsuit.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**

11